**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK D. MCDANIEL, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-6500 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LOYOLA UNIVERSITY MEDICAL CENTER, TRINITY HEALTH CORPORATION, LOYOLA UNIVERSITY CHICAGO, LOYOLA UNIVERSITY HEALTH SYSTEM, WILLIAM HOPKINSON, M.D., TERRY LIGHT, M.D., WILLIAM CANNON, M.D., DANE SALAZAR, M.D., and ALEXANDER GHANAYEM, M.D., | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion [183] for leave to file a second amended complaint ("SAC"). Defendants oppose the motion. For the following reasons, Plaintiff's motion [183] is granted.

**I.      Background**

Plaintiff Mark McDaniel, M.D. ("Plaintiff") commenced this suit on September 11, 2013 to seek redress for his alleged wrongful termination from Loyola University Medical Center's ("Loyola Medical") five-year Orthopaedic Residency Program during his fifth year in the program. Plaintiff alleges that Defendants' actions violate the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and Plaintiff's employment contract. Plaintiff also alleges that Defendants created a hostile work environment and interfered with his ability to

1

obtain another residency position and a post-resident fellowship position by falsely claiming that he was unprofessional and aggressive in the workplace, especially toward women.

On October 30, 2013, Plaintiff filed an eight-count amended complaint [30].[1] Count One of the amended complaint alleged that Loyola University Medical Center ("Loyola Medical"), Trinity Health Corporation ("Trinity"), Loyola University Chicago ("LUC"), Dr. William Hopkinson ("Hopkinson"), and Dr. Dane Salazar ("Salazar") violated USERRA by taking adverse employment actions against him in retaliation for his military service. Count Two alleged that Loyola Medical, Trinity, LUC, Hopkinson, Salazar, and Dr. William Cannon ("Cannon") violated USERRA by creating a hostile work environment based on antimilitary animus. Count Three alleged that Loyola Medical, Trinity, LUC, Dr. Terry Light ("Light"), and Dr. Alexander Ghanayem ("Ghanayem") violated his due process rights, in contravention of the Fifth and Fourteenth Amendments, by making false statements about him to prospective residency and fellowship programs. Count Four alleged that Loyola Medical, Trinity, and LUC breached a contract with him by retaliating against him when he refused to lie about his hours on the ACGME compliance survey, failing to schedule his probationary hearing within 45 days of his request, terminating him prior to the probationary hearing, failing to adequately consider the allegations on which probation was imposed at his probation hearing, failing to adequately consider the allegations on which termination was imposed at his termination hearing, and generally denying him the due process that Loyola Medical's Resident Handbook required. Count Five alleged that Ghanayem tortuously interfered with a prospective business expectancy by making false statements to fellowship programs. Count Six made the same claim against Light based on the statements that he allegedly made to residency programs. Counts Seven and

---

[1] For a detailed summary of Plaintiff's amended complaint, see the Court's order [81] granting in part and denying in part Defendants' motion to dismiss the amended complaint. *McDaniel v. Loyola Univ. Med. Ctr.*, 2014 WL 4269126, at *1 (N.D. Ill. Aug. 28, 2014).

Eight allege that Ghanayem and Light, respectively, defamed McDaniel by making these statements.

Defendants filed a motion to dismiss the amended complaint. On August 28, 2014, the Court granted Defendant's motion as to Counts III and VI as to Defendant Salazar and denied the motion in all other respects. See [81]. Since that time, the parties have been engaging in discovery. Written fact discovery closed on October 30, 2015 [167].

On November 24, 2015—while the period for oral fact discovery and expert discovery remained open—Plaintiff filed a motion [183] for leave to file his SAC. The SAC proposes four additions to the amended complaint.[2]

First, Plaintiff seeks to add a new party, Loyola University Health System ("LUHS"), as a defendant in Counts One (USERRA retaliation), Two (USERRA hostile work environment), and Four (breach of employment contract based on violations of Loyola Medical's resident handbook (the "Resident Handbook")). Until July 2011, LU was the sole corporate member of LUHS and LUHS was the sole corporate member of Loyola Medical.[3] LUHS maintained and maintains academic affiliation agreements ("Affiliation Agreements") with Loyola Medical and LUC. The Affiliation Agreements place reciprocal obligations on the parties and provide for the cross-supervision and cross-management of resident education.

Second, Plaintiff seeks to add allegations concerning Defendants' communications to the Accreditation Council for Graduate Medical Education ("ACGME"), which Plaintiff alleges

---

[2] The Court assumes all well-pled facts set forth in the SAC are true for purposes of assessing Plaintiff's motion for leave to amend.

[3] In July 2011, Trinity acquired LUHS and Loyola Medical.

3

substantiate his claims for defamation and tortious interference. See [183] at 2, 21-22.[4] Loyola Medical reports annually to the ACGME and has an obligation to submit accurate materials regarding medical residents enrolled in its orthopaedic surgery residency program. In July 2011, Loyola Medical executed a contract with Plaintiff, which indicated that he was considered a fourth year medical resident (the "PGY-4 Contract"). Plaintiff alleges, on information and belief, that during the 2011 reporting period, Loyola Medical representatives from the Graduate Medical Education office, under the authority of Defendant Hopkinson, informed the ACGME that Plaintiff was being held back to repeat his third year of medical residency. [183] at 21-22. Plaintiff was informed by a residency program coordinator at another institution that information was requested from the ACGME for all residency candidates transferring from outside institutions. False information regarding Plaintiff's residency status would negatively affect another residency program's opinion of Plaintiff. It would also affect the types of procedures that he could perform without supervision; for example, a PGY-3 cannot commence emergency orthopaedic surgery without supervision, but a PGY-4 resident can.

Third, Plaintiff adds additional factual allegations to his defamation claim against Defendant Light. See [183] at 51-53. Light stated in his September 27, 2011 meeting notes that the ACGME gave a citation to Loyola Medical due to Plaintiff's actions. On information and belief, Plaintiff alleges that Light made the same statement to the panel at Plaintiff's probation

---

[4] ACGME is a professional organization responsible for the accreditation of residency education programs. [183] at 11. ACGME accreditation is required in order for programs to receive graduate medical education funds from the federal Center for Medicare and Medicaid Services ("CMS"). Residents must graduate from ACGME-accredited programs to be eligible to take their board certification examinations. In addition, many states require completion of an ACGME-accredited residency program for physician licensure. *Id.* Loyola Medical's residency programs are accredited by the ACGME and therefore are required to follow ACGME policies and regulations, including work hour requirements, case log requirements, and overseeing the health and welfare of residents and patients.

hearing and to administrators of other residency programs. As a result of Light's statements, Plaintiff claims that he could not find another medical residency.

Fourth, Defendant adds a new claim for defamation against Hopkinson. [107] at 49 (Count Nine). According to Plaintiff, Hopkinson knowingly wrote false information, including in Plaintiff's final evaluation, concerning the number of procedures that Plaintiff had performed. On information and belief, Hopkinson shared this information with other individuals, who repeated the allegation that Plaintiff had an insufficient number of orthopedic procedures. At Plaintiff's termination hearing, Hopkinson falsely stated that Plaintiff had been required to retake step one of the United States Medical Licensing Exam, commonly referred to as "the boards." Hopkinson also falsely stated at the hearing that Plaintiff had 700 non-orthopaedic Current Procedural Terminology ("CPT") codes on his case log. After the hearing, Hopkinson published these statements with the ACGME and the American Board of Orthopaedic Surgery ("ABOS"), which are central repositories for data regarding medical residents. Other residency programs would have looked at or become aware of this data and Hopkinson's false statements. As a result of Hopkinson's statements, Plaintiff was terminated from his residency and unable to find another residency program.

## II. Legal Standard

A motion for leave to file an amended complaint should "freely" be granted "where justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). There is "[g]ood cause" to file an amended complaint "when it is reasonable that new claims are only recognized after filing an initial complaint." *Luckett v.*

*Conlan*, 561 F. Supp. 2d 970, 976 (N.D. Ill. 2008). Leave to amend should be freely given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002)).

### III. Analysis

#### A. Undue Delay and Prejudice

Defendants argue that Plaintiff unduly delayed filing his SAC. According to Defendants, Plaintiff had the information on which his proposed amendment is based long before he sought leave to amend. Specifically, Defendants argue that Plaintiff could have added LUHS as a defendant six months earlier than he did, because that is when Defendants produced the Affiliation Agreements from which Plaintiff's claims against LUHS arise. Defendants also argue that Plaintiff could have amended his complaint earlier to add the allegation that Hopkinson wrote false information in his final evaluation and about the number of procedures he performed, pointing to the fact that they produced Plaintiff's final evaluation and "Resident Data Sheet" on May 15, 2015. Defendants further argue that it is too late for Plaintiff to add the allegation that Light told others that Plaintiff had been on probation his entire fourth year, because that allegation "appears" to be based solely on an email that Dr. Parsons sent to Plaintiff on March 29, 2013. [192] at 6. According to Defendants, they have been prejudiced by

Plaintiff's undue delay because they want to perform written discovery to "pin down the factual basis" for Plaintiff's new allegations, but written fact discovery has closed. Plaintiff responds that he should be allowed to amend because LUHS is a related corporate entity to those already in the suit and the new allegations against Hopkinson and Light are based on documents and information obtained during discovery, after the amended complaint and initial disclosures were served.

"Delay on its own is usually not reason enough for a court to deny a motion to amend." *Soltys,* 520 F.3d at 743; see also *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) ("Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." (citation omitted)). However, "'the longer the delay, the greater the presumption against granting leave to amend.'" *Soltys*, 520 F.3d at 743 (quoting *King v. Cooke,* 26 F.3d 720, 723 (7th Cir. 1994)). "Undue delay is most likely to result in undue prejudice" when a combination of factors—"delay in proceedings without explanation, no change in the facts since filing of the original complaint, and new theories that require additional discovery—occur together." *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010). The party seeking to amend has the burden of showing that undue prejudice will not result to the non-moving party. *King,* 26 F.3d at 724.

Exercising the considerable discretion conferred under the standards articulated above, the Court concludes that Plaintiff has not engaged in undue delay and that Defendants will not suffer undue prejudice if the SAC is accepted for filing. Plaintiff's alleged six-month delay following Defendants' production of the relevant underlying documents concerning (1) LUHS's

Affiliation Agreements and (2) Hopkinson's alleged provision of false information in his final evaluation and about the number of procedures he performed was not unduly long. It takes some time for parties to review and analyze the documents that they receive in discovery—and Defendants acknowledge that they have produced more than 32,000 documents ([192] at 3). Courts in this Circuit have allowed amendment following longer delays. See *King*, 26 F.3d at 723-24 (district court did not abuse its discretion in prisoner's § 1983 action by granting defendants' motion to file an amended answer three years after filing their original answer, where the original answer contained inadvertent admissions that defendants did not notice until plaintiff moved for judgment on the pleadings and amendment was not prejudicial to plaintiff). Cf. *Dubicz*, 377 F.3d 787, 792-93 (7th Cir. 2004) (district court abused its discretion by denying, on grounds of undue delay and prejudice, leave to file second amended complaint eight months after original complaint was dismissed without prejudice, where plaintiffs were still within statute of limitations for bringing action, case had never progressed beyond pleading stage, and reasons given for finding of prejudice, *i.e.* witnesses' fading memories and lost documents, were perfunctory).

The cases on which Defendants rely for the proposition that Plaintiff has engaged in undue delay (see [192] at 6-7) involved longer delays than Plaintiff's, as well as plaintiffs who sought to add allegations that they admittedly knew even prior to filing suit. See *Aleshire v. Harris, N.A.*, 586 F. App'x 668, 672 (7th Cir. 2013) (district court did not abuse its discretion in denying plaintiff leave to file a third amended complaint over two years after case was commenced, where the facts underlying the proposed new claims were known at the time the original complaint was filed, the motion for leave to file an amended complaint was filed more than two years after the action was commenced, and defendant had already borne the burden of

filing three motions to dismiss); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (district court did not abuse its discretion in denying plaintiff leave to file a second amended complaint due to alleged discovery of other lawsuits against one of the defendants, where information about those lawsuits was publicly available "long before he sought leave to amend" and the principal lawsuit on which plaintiff relied had been pending for four years before plaintiff filed his suit).

As to the remaining new allegation in the proposed SAC—that Light told Dr. Parsons that Plaintiff had been on probation for the entirety of his third year and intentionally harmed his chances of getting a replacement residency at another hospital—the Court is not convinced that Plaintiff could and should have made this allegation earlier. Defendants assert that this allegation is based solely on an email that Plaintiff received from Dr. Parsons on March 29, 2013. See [192] at 6. However, in the email Dr. Parsons refers to "a probation that started in your 4th year," but he does not specify that Light (as opposed to Dr. Yaszemski, who is specifically mentioned in the email) told him about the probation or that it lasted a full year. [192-1] at 9.

The Court recognizes Defendants' concern that they be allowed to take discovery aimed at Plaintiff's new allegations, including: (1) written discovery to "pin down the factual basis for Plaintiff's allegation that Dr. Light purportedly told Dr. Parsons that Plaintiff had been on probation for the entirety of his fourth year"; (2) discovery on this issue of what residency programs purportedly looked at or became aware of Dr. Hopkinson's allegedly false statements to ACGME and the American Board of Orthopaedic Surgery; and (3) discovery on Plaintiff's claim that Dr. Hopkinson's alleged defamatory statement resulted in the loss of his residency. These are narrow discovery topics that should not greatly impact the progress of this case—

9

especially given that the schedule for expert discovery recently was extended until the end of October by agreement of the parties [see 230] and a trial date has not been set. The parties should confer and propose to Magistrate Judge Mason a schedule for re-opening fact discovery to permit appropriate additional discovery on the SAC's new allegations.

### B. Futility

Defendants also argue that the Court should deny Plaintiff's motion to amend on futility grounds. Courts "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi*, 721 F.3d at 869. See also *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("[A]n amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss.").

The Court cannot determine based on the record before it that amendment would be futile, for either reason urged by Defendants. First, Defendants argue that the proposed addition of LUHS as a party is futile because Counts One (Violation of USERRA-Retaliation), Two (Violation of USERRA-Hostile Work Environment) and Four (Breach of Contract) of the proposed SAC fail to allege facts sufficient to show that LUHS was Plaintiff's employer under USERRA or that LUHS and Plaintiff had any type of contractual relationship. Defendants quote two provisions of the 2011 Affiliation Agreement as proof that Loyola Medical (Plaintiff's employer) and LUHS did not have "any cross-supervisory or cross-management obligations" such that LUHS could have any responsibilities as Plaintiff's employer. See [192] at 9 (quoting section 2.2.3 ("Residents and clinical fellows shall be the employees of LUMC"; and section 2.7.1 ("each Party shall supervise its own employees and shall be responsible for the compensation, benefits, * * * human resource policies, and the terms of conditions of employment of its own employees")). While this language does suggest that Loyola Medical

was Plaintiff's employer, Defendants have not demonstrated that, as a matter of law, this language necessarily prohibits LUHS from also being considered Plaintiff's employer for any purpose. Cf. *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir. 1995) (dismissal of breach of contract claim justified and appropriate only where contract "shows unambiguously on its face that the relief prayed for is not merited"). As Plaintiff points out, USERRA's definition of "employer" is broad enough to allow the possibility that Plaintiff has multiple employers, including LUHS.[5]

Second, Defendants argue that Plaintiff's proposed amendment concerning Hopkinson's communications to the ACGME are futile because "this allegation is directly contrary to the documents produced in this action." [192] at 10. Defendants attach copies of "Resident Detail" reports, which they claim "conclusively establish that Plaintiff was properly progressed by Loyola Medical to a Year 3 Resident for Academic Year 2010-11 and to a Year 4 Resident for Academic Year 2011-2012 at or about the same time as other residents of his class." *Id.* See also [192-1] at 28-31. Assuming without deciding that the "Resident Detail" reports are subject to judicial notice, they do not "conclusively establish" when Plaintiff was promoted to a Year 4

---

[5] 20 C.F.R. § 1002.37 provides:

> Can one employee be employed in one job by more than one employer?
>
> Yes. Under USERRA, an employer includes not only the person or entity that pays an employee's salary or wages, but also includes a person or entity that has control over his or her employment opportunities, including a person or entity to whom an employer has delegated the performance of employment-related responsibilities. For example, if the employee is a security guard hired by a security company and he or she is assigned to a work site, the employee may report both to the security company and to the site owner. In such an instance, both employers share responsibility for compliance with USERRA. If the security company declines to assign the employee to a job because of a uniformed service obligation (for example, National Guard duties), then the security company could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA. Similarly, if the employer at the work site causes the employee's removal from the job position because of his or her uniformed service obligations, then the work site employer could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA.

resident, because they do not contain any information about when Plaintiff was promoted and they all contain the same "Report Date" of "07/17/15." [192-1] at 28-31. The Court cannot credit the letter from Doug Carlson that Defendants submit to help interpret the Resident Detail reports (see [192-1] at 34), because it is inappropriate for the Court to go beyond the pleadings and any critical documents referred to therein when considering Defendants' futility objection to Plaintiff's motion to amend. Cf. *Santangelo v. Comcast Corp.*, 2016 WL 464223, at *7 (N.D. Ill. Feb. 8, 2016) (motion to dismiss under 12(b)(6) must be decided based only on the complaint, documents attached to the complaint, documents that are critical to and referred to in the complaint, and information that is subject to proper judicial notice).

## III. Conclusion

For the foregoing reasons, Plaintiff's motion [183] for leave to file the SAC is granted.

Dated: April 7, 2016

_____
Robert M. Dow, Jr.
United States District Judge