FILED

7/14/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK D. MCDANIEL, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cv-6500 |
| | ) | |
| LOYOLA UNIVERSITY MEDICAL | ) | Judge Robert M. Dow, Jr. |
| CENTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JURY INSTRUCTIONS

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy or public opinion to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

During this trial, I may have asked a witness a question myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

The evidence consists of the testimony of the witnesses and the exhibits admitted in evidence.

During the trial, certain testimony was presented to you by the reading of depositions and video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits, or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any of the parties to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- the witness's memory;
- any interest, bias, or prejudice the witness may have;
- the witness's intelligence;
- the manner of the witness while testifying;
- and the reasonableness of the witness's testimony in light of all the evidence in the case.

You may consider statements given by a Party or a Witness under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering prior inconsistent statements or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You have heard witnesses, Dr. Stan Smith and Mr. William Metzdorff, give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

You must give separate consideration to each claim and each party in this case. Although there are five defendants, it does not follow that if one is liable, any of the others is also liable.

In considering a claim against a defendant, you must not consider evidence admitted only against other defendants or only as to other claims.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

In this case Defendants Loyola University Medical Center, Loyola University Health System, and Loyola University of Chicago are corporations. Defendants Dr. William Hopkinson, Dr. Terry Light, and Plaintiff Dr. Mark McDaniel are all individuals. All parties are equal before the law.

In this case, Plaintiff Mark D. McDaniel, M.D. brings five claims.

First, Dr. McDaniel claims that Defendants Loyola University Medical Center, Loyola University Health System, and Loyola University of Chicago (which I will call the "Loyola Defendants") and Defendant William Hopkinson, M.D., placed him on probation and terminated his employment on account of his uniformed service, including his exercise of rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), in violation of USERRA.

Second, Dr. McDaniel claims that the Loyola Defendants and Dr. Hopkinson created a hostile or abusive work environment on account of his uniformed service in violation of USERRA.

Third, Dr. McDaniel claims that, in terminating his employment, Defendant Loyola University Medical Center and Defendant Loyola Health System breached a contract with him.

Fourth, Dr. McDaniel claims that Dr. Terry Light defamed him.

Fifth, Dr. McDaniel claims that Dr. William Hopkinson defamed him.

Defendants deny all five claims.

Dr. McDaniel's first claim is under a federal law called the Uniform Services Employment and Reemployment Rights Act, also called USERRA. USERRA prohibits an employer from discriminating against an employee in the terms and conditions of the employee's employment because of the employee's military service.

USERRA does not require a service member to ask for or get his employer's permission to perform service in the armed services. USERRA requires only that a service member give notice to his employer of his intention to leave his employment position to perform service in the armed services. The notice the service member gives can be either verbal or written; it can be informal and need not follow any particular format. Although USERRA does not specify how far in advance notice must be given to the employer, an employee should provide notice as far in advance as is reasonable under the circumstances. The Defense Department strongly recommends that advance notice to civilian employers be provided at least 30 days prior to departure for uniformed service when it is feasible to do so.

Dr. McDaniel claims that Defendants Loyola University Medical Center, Loyola University Health System, Loyola University of Chicago (which I will refer to together as "the Loyola Defendants") and Dr. Hopkinson discriminated against him by placing him on probation and terminating his employment on account of his uniformed service, including because he performed uniformed service in the Missouri Air National Guard, which is a uniformed service under USERRA, and his exercise of rights under USERRA.

Loyola Defendants and Dr. Hopkinson deny Dr. McDaniel's USERRA discrimination claim and assert that Dr. McDaniel was placed on probation and terminated for unprofessional and unethical behavior, failure to demonstrate substantial improvement while on academic probation, being absent from a duty assignment without departmental consent, and falsifying surgical logs.

To succeed on this USERRA claim, Dr. McDaniel must prove each of the following facts by a preponderance of the evidence:

1.      Dr. McDaniel performed service in a uniformed service;

2.      The Loyola Defendants and Dr. Hopkinson placed Dr. McDaniel on probation and/or terminated Dr. McDaniel's residency; and

3.      Dr. McDaniel's uniformed service, which includes his exercise of rights under USERRA, was a "motivating factor" that prompted the Loyola Defendants and Dr. Hopkinson to take either of those actions.

If you find that Dr. McDaniel has failed to prove any of these things by a preponderance of the evidence, then your verdict should be for the Defendants. If, however, you find that Dr. McDaniel has proved each of the things required of him by a preponderance of the evidence, you must then consider the Defendants' argument that they would have placed Dr. McDaniel on probation and terminated him even if they had not taken Dr. McDaniel's service in a uniformed service into account. If you find that the Defendants proved by a preponderance of the evidence that they would have placed Dr. McDaniel on probation and terminated him for reasons other than his service in a uniformed service, then your verdict should be for the Defendants. If the Defendants have not proved this by a preponderance of the evidence, then your verdict should be for Dr. McDaniel.

To prove that Plaintiff Dr. McDaniel's uniformed service, which includes his exercise of rights under USERRA, was a "motivating factor" in the Loyola Defendants' and Dr. Hopkinson's decisions to place him on probation and/or terminate him, Plaintiff does not have to prove that his service was the only reason that Defendants placed him on probation and/or terminated him. It is enough if Plaintiff Dr. McDaniel proves that his uniformed service, which includes his exercise of rights under USERRA, contributed to the Loyola Defendants' and Dr. Hopkinson's decisions. If Dr. McDaniel's uniformed service made a difference in either of Loyola Defendants' or Dr. Hopkinson's decisions, you may find that it was a motivating factor in the decision.

An employer may not take an adverse action against an employee, like placing the employee on probation and/or terminating the employee, because of the employee's uniformed service, which includes his exercise of rights under USERRA. But an employer may place an employee on probation and/or terminate him for any other reason, good, or bad, fair, or unfair. If you believe the Loyola Defendants' and Dr. Hopkinson's reasons for the decision to place Dr. McDaniel on probation and/or terminate him and find that the decisions were not motivated by Plaintiff Dr. McDaniel's uniformed service, you must not second guess Defendants' decisions, and you must not substitute your own judgment for Defendants' judgment—even if you do not agree with it.

The military orders issued by the Missouri Air National Guard to Plaintiff Dr. Mark McDaniel in 2012 must be accepted as valid.

Dr. McDaniel's second claim is that the Loyola Defendants and Dr. Hopkinson created a hostile or abusive work environment on account of Dr. McDaniel's membership in a uniformed service. To succeed on this claim, Dr. McDaniel must prove each of the following seven things by a preponderance of the evidence:

      1.    Dr. McDaniel was subjected to derogatory comments, name calling and unflattering impersonations*;*

      2.    The conduct was unwelcome;

      3.    The conduct occurred because Dr. McDaniel was a member of a uniformed service*;*

      4.    The conduct was sufficiently severe or pervasive that a reasonable person in Dr. McDaniel's position would find Dr. McDaniel's work environment to be hostile or abusive;

      5.    At the time the conduct occurred, Dr. McDaniel believed that the conduct made his work environment hostile or abusive;

      6.    The Loyola Defendants and Dr. Hopkinson knew or should have known about the conduct; and

      7.    The Loyola Defendants and Dr. Hopkinson did not take reasonable steps to correct the situation or prevent harassment from recurring.

If you find that Dr. McDaniel has proved by a preponderance of the evidence each of the seven things required of him, you must find for Dr. McDaniel. However, if you find that Dr. McDaniel did not prove by a preponderance of the evidence each of the things required of him, you must find for Defendants.

If you find that Dr. McDaniel has proved one or both of his USERRA claims against the Loyola Defendants and Dr. Hopkinson, you will not consider the question of damages as to that claim. Damages for violations of USERRA are determined by the Court. Your only job with respect to Dr. McDaniel's USERRA claims is to determine the issue of liability.

However, if you find that Dr. McDaniel has proved one or both of his USERRA claims against the Loyola Defendants and Dr. Hopkinson, then you also must decide whether Defendants "willfully" violated the law. If the Loyola Defendants or Dr. Hopkinson knew the decisions to place Dr. McDaniel on probation, or terminate his employment violated the law, or acted in reckless disregard of that fact, or if Defendants knew or should have known the harassing conduct was severe or pervasive enough to alter the conditions of Plaintiff's employment and created a hostile or abusive atmosphere, or acted in reckless disregard of that fact, but still did not take reasonable steps to correct the situation or prevent harassment from recurring, then their conduct was willful. If Defendants did not know or knew only that the law was potentially applicable and did not act in reckless disregard as to whether their conduct was prohibited by the law, then the Defendants' conduct was not willful.

Dr. McDaniel's third claim is that Defendants Loyola University Medical Center (which I will call "LUMC") and Loyola University Health System (which I will call "LUHS") and which, together, I will call "the Loyola Defendants" breached the Graduate Medical Education agreement with him in two ways: (1) by failing to abide by the Resident Handbook's grievance procedure requirement to hold his probation grievance hearing within 45 days after his request for a hearing; and (2) by not following the Resident Handbook's other grievance procedures. To succeed on his breach of contract claim, Dr. McDaniel has the burden of proving each of the following four things by a preponderance of the evidence:

1. The existence of a contract between Dr. McDaniel and LUMC and LUHS;

2. Dr. McDaniel substantially performed his contractual obligations;

3. Defendants LUMC and LUHS failed to perform their obligations under the contract; and

4. Resulting damage to Dr. McDaniel.

If you find from your consideration of all the evidence that one or more of these elements has not been proven for both claimed breaches, you must find in favor of Defendants LUMC and LUHS.

With respect to Dr. McDaniel's claims that the Loyola Defendants breached the Resident Handbook's other grievance procedures, if you find from your consideration of all the evidence that each of the above elements has been proven, then you must find in favor of Dr. McDaniel and consider the amount of damages to be awarded.

With respect to Dr. McDaniel's claim that the Loyola Defendants failed to hold his probation grievance hearing within 45 days of his request for a hearing, if you find from your consideration that each of the above elements has been proven, then you must consider the Loyola

28

Defendant's claim of an "affirmative defense," that Dr. McDaniel "waived" that breach. The Loyola Defendants' affirmative defense does not apply to Dr. McDaniel's claims relating to the other grievance procedures.

Only as to the portion of Dr. McDaniel's breach of contract claim concerning the failure to hold the probation grievance hearing within 45 days of his request for such hearing, the Loyola Defendants contend that Dr. McDaniel "waived" that breach by agreeing that the hearing could go forward outside of the 45-day period.

To prove this "affirmative defense," the Loyola Defendants must prove by a preponderance of the evidence that Dr. McDaniel knew he had the right to have a probation grievance hearing within 45 days of his request for the hearing and that he intentionally relinquished that known right. Dr. McDaniel denies this affirmative defense.

If the Loyola Defendants prove their affirmative defense, then they are relieved of their obligation under the contract to have conducted the probation grievance hearing within 45 days of Dr. McDaniel's grievance, and you must find in favor of the Loyola Defendants on that component (and only that component) of Dr. McDaniel's breach of contract claim. If you find that Dr. McDaniel has proven all the elements of his claim, and the Loyola Defendants have not proven their affirmative defense, you must find in favor of Dr. McDaniel on that claim for breach of contract, and consider the amount of damages to be awarded.

29

If you find in favor of Dr. McDaniel on his breach of contract claim as to either or both claimed breaches, you must then decide how much money, if any, would fairly compensate Dr. McDaniel for the Loyola Defendants' breach of contract. Dr. McDaniel has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of the Loyola Defendants' breach. In calculating Dr. McDaniel's damages, you should determine that sum of money that will put Dr. McDaniel in as good a position as he would have been in if Dr. McDaniel and the Loyola Defendants had performed all of their promises under the contract.

Dr. McDaniel seeks an award of several different categories of contract damages.

1.    Direct damages for the Loyola Defendants not following the grievance procedure in the Resident Handbook. Direct Damages are the amount of gain Dr. McDaniel would have received if the Loyola Defendants had fully performed the contract. You calculate the amount of this gain by determining the value of the contract benefits Dr. McDaniel did not receive because of the breach and then subtracting from that value, the amount you calculate the value of whatever expenses Dr. McDaniel saved because of the breach.

2.    Special damages for the Loyola Defendants not following the grievance procedure in the Resident Handbook. Special damages are different from direct damages. Dr. McDaniel must prove these damages were reasonably foreseeable by the parties when they entered into the contract.

3.    Incidental damages for the Loyola Defendants not following the grievance procedure in the Resident Handbook. Incidental damages are different from direct and special damages. "Incidental Damages" are costs that were

30

reasonably spent either in responding to the Loyola Defendants' breach of the contract or in securing the benefits the Loyola Defendants were to have provided.

The law provides a party cannot recover damages he could have prevented by exercising ordinary care and diligence when he learned or should have learned of the breach.

The Loyola Defendants argue that Plaintiff Dr. McDaniel's claim for lost wages and benefits should be reduced by the amount Dr. McDaniel reasonably would have earned during the period for which you award damages, if any.

The burden is on the Loyola Defendants to prove Plaintiff Dr. McDaniel failed to minimize his damages and that the damages should be reduced by a particular amount as a result.

In this case, the Loyola Defendants claim and have the burden of proving that, with reasonable efforts and ordinary care, Dr. McDaniel could have avoided some losses in whole or in part, such as that Dr. McDaniel reasonably might have found comparable employment, even though his losses originally resulted from the Loyola Defendants' failure to keep its promise.

If the Loyola Defendants prove that Dr. McDaniel could have avoided some losses in whole or in part, such as by finding comparable employment with reasonable efforts and ordinary care, you may not require the Loyola Defendants to pay the amount Dr. McDaniel could reasonably have avoided and you must subtract any such amount from the amount of damages you have found.

If you find Dr. McDaniel incurred costs in making a reasonable effort to avoid such losses, you must make an award to Dr. McDaniel for such costs.

Dr. McDaniel's fourth claim is against Dr. Light for defamation and his fifth claim is against Dr. Hopkinson for defamation. Dr. McDaniel contends that Dr. Light made the following statements: (1) Dr. Light told the probation grievance panel that Dr. McDaniel was the source of a citation from the Accreditation Council for Graduate Medical Education (the "ACGME") against Loyola University Medical Center's Orthopedic Surgery Residency Program; and (2) Dr. Light told Dr. Yaszemski of the Mayo Clinic that one of Dr. McDaniel's co-residents was "physically afraid" of Dr. McDaniel. Dr. McDaniel contends that Dr. Hopkinson told the termination grievance panel at Loyola University Medical Center that Dr. McDaniel failed his medical board examinations. Dr. McDaniel contends that all of these statements are defamatory.

Defendants Dr. Light and Dr. Hopkinson deny that they defamed Dr. McDaniel. Defendants Dr. Light and Dr. Hopkinson also deny that any claimed act was a cause of damages claimed by Dr. McDaniel. Finally, Defendants Dr. Light and Dr. Hopkinson also deny that Dr. McDaniel sustained damages.

To succeed on his defamation claim against Dr. Light about the statement to the probation grievance panel concerning the ACGME citation and his statement to Dr. Yaszemski that one of Dr. McDaniel's co-residents was "physically afraid" of him, or on his claim against Dr. Hopkinson about the statement to the termination grievance panel, Dr. McDaniel has the burden of proving by a preponderance of the evidence:

1.      Defendant made a false statement about Plaintiff Dr. McDaniel;

2.      Defendant made an unprivileged publication of that statement to a third party; and

3.      The publication caused damages to Dr. McDaniel, unless you determine that Defendant's statement(s) were actionable "per se."

If you find from your consideration of all the evidence that Dr. McDaniel has failed to prove any one of the propositions required, then your verdict should be for Defendants.

If you find from your consideration of all the evidence that Dr. McDaniel has proved each of the propositions required, then you must consider whether Defendants abused their "qualified privilege." If you find that Dr. McDaniel has proved Defendants abused their "qualified privilege," then the verdict should be for Dr. McDaniel.

A statement is considered a defamatory statement if it harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him.

A statement may be defamatory only if it is false.

"Publication" means that a third party saw, read or heard the statement involved in this case. As long as the statement was published to a third party, it need not have been published to Dr. McDaniel.

In regard to element two of Dr. McDaniel's defamation claims, the Court has determined, and now instructs you as a matter of law, that Dr. Light had a "qualified privilege" to make the statement about the citation from the ACGME to the probation grievance hearing and to make the statement about Dr. McDaniel's co-resident to Dr. Yaszemski. The Court has also determined, and now instructs you as a matter of law, that Dr. Hopkinson had a "qualified privilege" to make his statement at the termination grievance hearing.

However, Dr. Light and Dr. Hopkinson lose the benefit of this privilege if you find that they abused it.

Dr. Light and Dr. Hopkinson abused the privilege if you find that Plaintiff has proven by a preponderance of the evidence that the Defendant you are considering intentionally published the material:

1. Knowing the statements were false; or

2. Despite a high degree of awareness that the statements were false; or

3. Despite entertaining serious doubts as to their truth, and then failing to properly investigate the truth.

A defamatory statement is actionable "per se" if you find that Defendant's statement(s) (a) impute an inability to perform or want of integrity in Dr. McDaniel's performance of his employment duties, or (b) prejudice Dr. McDaniel, or impute lack of ability in his profession.

If you find a statement actionable "per se," damages are presumed, meaning Dr. McDaniel does not need to prove actual damage to his reputation to recover.

If you do not find the statements actionable "per se," you need to make a separate finding that the statement caused damages to Dr. McDaniel.

A statement is a cause of damages only if it contributes substantially to producing such damages.

In the event that you find that any of the Defendants' statements either (a) imputes an inability to perform or want of integrity in Dr. McDaniel's performance of his employment duties, or (b) prejudices Dr. McDaniel or imputes a lack of ability in his profession, then the statement is actionable "per se," and Dr. McDaniel is entitled to recover the following categories of damages without any proof of actual or pecuniary injury, as damages are presumed:

1.  Economic loss;

2.  Mental suffering and resulting bodily harm;

3.  Personal humiliation; or

4.  Impairment of his personal and professional reputation and standing in the community.

If you find in favor of Plaintiff on his defamation claim against either Defendants Dr. Light or Dr. Hopkinson, but do not find the statement in question is actionable "per se," then you must then fix the amount of money which will reasonably and fairly compensate Dr. McDaniel for any of the above categories of damages proved by the evidence to have resulted from the wrongful conduct.

If you find in favor of Plaintiff Dr. McDaniel on either his defamation claims against Defendants Dr. Light or Dr. Hopkinson, in addition to compensatory damages, the law permits you under certain circumstances to award punitive damages. If you find that Defendant's conduct was willful and wanton and proximately caused damage to Dr. McDaniel, and if you believe that justice and the public good require it, you may award an amount of money that will punish the Defendant(s) and discourage them and others from similar conduct.

In arriving at your decision as to the amount of punitive damages, you should consider the following three questions. The first question is the most important to determine the amount of punitive damages:

1.    How reprehensible was Defendant's conduct? On this subject, you should consider the following: (a) the facts and circumstances of Defendant's conduct; (b) any vulnerability of Plaintiff; (c) the duration of the misconduct; (d) the frequency of Defendant's misconduct; (e) whether the harm was physical as opposed to economic; and (f) whether Defendant tried to conceal the misconduct;

2.    What actual and potential harm did Defendant's conduct cause to Plaintiff in this case?

3.    What amount of money is necessary to punish Defendant and discourage him and others from future wrongful conduct?

The amount of punitive damages must be reasonable and in proportion to the actual and potential harm suffered by Plaintiff.

42

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

A verdict form has been prepared for you.

[Verdict form read]

Take this form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division (for example, 5-4 or 7-2) is, if any.

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.